IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO: 3:05-CV-82

| | |
|---|---|
| **FIRST CARE MEDICAL CLINIC, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**POLYMEDCO, INC.,**<br><br>Defendant. | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion for Summary Judgment" (Document No. 17) by Polymedco, Inc., the corresponding memorandum of law and the Affidavit of Richard De Alto ("De Alto Aff.") and exhibits thereto (Document No. 18), all filed May 30, 2006; the "Plaintiff's Response in Opposition to Motion for Summary Judgment" (Document No. 19), corresponding memorandum of law, and the Affidavit of Benedict O. Okwara (Document 20), all filed June 27, 2006, and the "Defendant's Reply Memorandum of Law" (Document 21) filed July 7, 2006. The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636(c) and the matter is now ripe for disposition. Having carefully considered the arguments of the parties, including oral argument, and the record, the undersigned will <u>grant</u> "Defendant's Motion for Summary Judgment" and enter judgment in Defendant's favor on its counterclaim.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from the purchase by Plaintiff First Care Medical Clinic, Inc. ("First Care") from Defendant Polymedco, Inc. ("Polymedco") of a Poly-Chem benchtop chemical analyzer and related equipment, collectively called a "Poly-Chem System," pursuant to a

1

Purchase Agreement dated October 21, 2003.[1]  The benchtop analyzer can be used to perform certain blood chemistry laboratory tests.  At various times afterward, First Care ordered from Polymedco quantities of Polymedco's proprietary reagents that could be used to run laboratory tests on the Poly-Chem analyzer. (De Alto Aff. ¶¶ 2-7)

Polymedco installed the Poly-Chem Analyzer and related equipment on December 12, 2003, and provided training to two employees of First Care on the equipment.  On March 5, 2004, Dr. Benedict Okwara, as "Lab Director," signed a Poly-Chem Installation and Training Form acknowledging that the Poly-Chem System equipment had been installed and was in working order as of December 12, 2003. (De Alto Aff. Ex. D).

On April 22 and 23, 2004, Polymedco provided additional training to five other employees of First Care.  On April 23, Dr. Okwara signed a second Poly-Chem Installation and Training Form acknowledging that the Poly-Chem System equipment had been installed and was in working order as of April 22-23, 2004.  (De Alto Aff. Ex. D).

Dr. Okwara's affidavit states that the second training session resulted from difficulties that First Care experienced in operating the Poly-Chem System to specifications.  He further states that after the April 22-23 retraining, First Care discontinued using the Poly-Chem System. (Okwara Aff. 4-6).

At various times in March and April 2004, First Care had ordered from Polymedco quantities of Polymedco's proprietary reagents used to run laboratory tests on the Poly-Chem analyzer.  Polymedco shipped the reagents to First Care and issued invoices for the reagents.  It is undisputed that the following invoices remain unpaid and are owed by First Care:

    #595451      March 24, 2004      $ 956.42

---

[1] The factual background is related in the light most favorable to First Care, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed. 202 (1986).

| | | |
|---|---|---|
| #597557 | April 6, 2004 | $  144.45 |
| #597641 | April 6, 2004 | $   43.68 |
| #598566 | April 12, 2004 | $1,518.89 |
| #599837 | April 20, 2004 | $   94.37 |
| #600100 | April 21, 2004 | $  270.50 |
| #600328 | April 22, 2004 | $1,044.89 |
| #601037 | April 27, 2004 | $8,577.33 |

The total principal amount of the outstanding invoices is $12,650.53. (De Alto Aff. ¶ 8-15).

On January 14, 2005, First Care filed this action against Polymedco, alleging claims for Breach of Contract and Intentional Misrepresentation. The action was timely removed to this Court on February 22, 2005. First Care seeks compensatory damages, including the costs of purchasing the equipment and lost profits; punitive damages; costs and attorneys' fees. Polymedco answered and asserted a counterclaim for the unpaid invoices set out above.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. Rule 56(c); accord Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). The movant has the initial burden to show a lack of evidence to support the non-moving party's case. Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202

3

(1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50, 106 S. Ct. 2505; Lenhart v. General Elec. Co., 140 F. Supp. 2d 582, 589 (W.D.N.C. 2001).

## III. DISCUSSION

### A. Plaintiff's Breach of Contract Claim

First Care's breach of contract claim is premised on its allegation that its inability to operate the Poly-Chem system was due to a "defect in the equipment" that existed and that Polymedco failed to cure. (Comp. ¶ 10). Polymedco argues, and the Court finds, that First Care has failed to come forward with sufficient evidence, expert or otherwise, showing that the equipment sold by Polymedco was defective.

It is well settled that to establish a claim of product defect, a plaintiff must come forward with evidence of the defect. A defect may not by inferred from the failure of the product alone. See, e.g., Jolley v. General Motors Corporation, 55 N.C. App. 383, 385, 285 S.E.2d 301, 303 (1982). If a plaintiff fails to come forward with evidence of a defect, judgment must be granted in defendant's favor. Jolley, 55 N.C. App. at 385-86, 285 S.E.2d at 303-04 (1982) (affirming directed verdict for defendant where plaintiff did not produce any evidence of defendant's negligence or breach of implied warranty beyond the mere fact of a tire failure causing injury to plaintiff); St. Clair v. General Motors Corp., 10 F. Supp. 2d 523, 532 (M.D.N.C. 1998) (granting summary judgment in the absence of expert testimony or other evidence of defect); Penland v. BIC Corp., 796 F. Supp. 877, 883-885 (W.D.N.C. 1992) (granting summary judgment in the absence of evidence of defect).

This burden is typically met by evidence from a qualified expert identifying a manufacturing defect in the subject product. But First Care has not provided any evidence, let alone admissible expert evidence, tending to show the existence of a product defect.

Plaintiff has failed to disclose any expert and failed to provide any expert report or expert affidavit to support its allegations of a product defect. The Fourth Circuit Court of Appeals has admonished litigants that "a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field." Oglesby v. General Motors Corp., 190 F.3d 244, 249 (4th Cir. 1999) (quoting Alevromagiros v. Hechinger Co., 993 F.2d 417, 422 (4th Cir. 1993)). Here, First Care has submitted no expert evidence at all.

North Carolina and federal cases alike hold that a plaintiff must offer "legal evidence tending to establish beyond mere speculation or conjecture every essential element" of its claim. Jackson v. Neill McKay Gin Co., 255 N.C. 194, 196, 120 S.E.2d 540, 542 (1961).

Dr. Okwara's affidavit alleges that that his staff had difficulties operating the Poly-Chem System successfully. Twice, however, he signed acknowledgments that the Poly-Chem System was installed and in working order. His affidavit does not exclude the possibility that errors by First Care employees were the cause of their difficulties, and certainly does not identify any defective condition in the equipment.

To the contrary, the installation records annexed to Mr. DeAlto's Affidavit as Exhibit "D" demonstrate that the equipment was functioning and not defective at the time of installation, and that it yielded laboratory test results within specifications.

Without any evidence that the Poly-Chem System equipment that it purchased was defective, as alleged in its Breach of Contract claim, First Care cannot meet its burden of proof. Summary judgment for Defendant is appropriate.

**B. Plaintiff's Claim for Intentional Misrepresentation**

First Care has also asserted a claim for intentional misrepresentation or fraud. It alleges that Polymedco sales representatives "knew that its Poly-Chem had functional problems" but described it as reliable and easy to operate. First Care has failed, however, to come forward with evidence tending to show that Polymedco's sales representatives made any intentional misrepresentation, and the record evidence demonstrates that the Poly-chem System was functional. More to the point, First Care improperly seeks to base a tort claim on a purchase of goods that occurred pursuant to a contract. This attempt to transform a contract claim into a tort claim, when the only damages alleged constitute economic loss, is precluded by the economic loss doctrine, whether New York or North Carolina law is applied. [2]

In New York, which plaintiff argues provides the applicable law, the courts have consistently held that "[t]o prevent such open-ended liability, courts have applied the economic loss rule to prevent recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 16 (2d Cir. 2000).

The economic loss rule in New York is generally applied in product liability claims, where the economic losses are contractual, where the parties' contract establishes their remedies, allocates their respective risks and limits their liability to disregard the terms set forth in the

---

[2] First Care argues that Paragraph 9 of the Poly-Chem Purchase Agreement, which states that New York laws "govern this agreement," also would dictate that New York law governs a tort claim that First Care contends could arise independent of the agreement. But this Court would apply North Carolina choice of law rules, which follow the *lex loci delicti* analysis for tort claims. Under *lex loci*, North Carolina law governs any tort claims. This choice of law question is ultimately moot, however, because both states have adopted the economic loss rule.

contract. See, Bocre Leasing Corp. v. General Motors Corp. (Allison Gas Turbine Division), 840 F. Supp. 231 (E.D.N.Y. 1994); Schiavone Const. Co. v. Elgood Mayo Corp., 56 N.Y.2d 667, 668-69 (1982). The holding in Schiavone by New York's highest court adopts the key rationale of the economic loss doctrine: disappointed product purchasers are best left with contract-only remedies, so that the spheres of contract and tort law can be rationally and predictably defined.

First Care's reliance on the Schiavone, Hydro Investors and Sommer cases is misplaced. In Schiavone, the New York Court of Appeals reversed the Appellate Division and trial court and embraced the economic loss rule. It held that under New York law the product owner had only contract remedies, which it held were the best way to allocate risk of product malfunction in terms of product price, warranties and insurance. 56 N.Y. 2d at 668-69.

Sommer v. Federal Signal Corp., 79 N.Y. 2d 540 (1992) is distinguishable from the case at bar. In Sommer, the Court recognized several factors which could blur the distinction between claims in contract and in tort. None of these policy-based factors are present here.

Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 16 (2d Cir. 2000) is similarly inapplicable to the case at bar. Hydro Investors involved a professional malpractice claim against an engineering company for failing to properly perform calculations relating to proposed hydroelectric plants. There is no similar allegation here. Rather, First Care's allegations seek to recast as intentional misrepresentation a claim for breach of contract for the sale of goods.

Like New York, "North Carolina bars recovery for economic loss in tort and adjudicates such claims under contract law. The 'economic loss' rule prohibits the purchaser of a defective product from using tort law to recover economic losses." Coker v. DaimlerChrysler Corp., No. 01 CVS 1264, 2004 NCBC 1, 2004 WL 32676, *3 (N.C. Super. Ct., Rowan County, Business Court, Jan. 5, 2004); aff'd on other grounds, 172 N.C. App. 386, 617 S.E.2d 306 (2005); aff'd,

7

6360 N.C. 389, 627 S.E.2d 461 (2006)(per curiam). In Coker, Judge Ben F. Tennille applied the economic loss rule to bar claims for common law fraud and unfair trade practice, holding that to do otherwise would "eviscerate the contract/warranty system" of adjudicating liability now in place.

Judge Tennille's Coker ruling was recently followed by the Middle District in Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 626-27 (M.D.N.C. 2006), where Magistrate Judge P. Trevor Sharp recommended and Judge William L. Osteen ordered dismissal of an unfair trade practice claim in a similar case alleging undisclosed product defects.

First Care's claim of intentional misrepresentation falls squarely within the economic loss doctrine. The subject product was sold to First Care pursuant to a written contract, and First Care's alleged damages are for economic losses, rather than personal injury or property damage. No policy-based exceptions to the economic loss rule are present here. In short, Plaintiff's claim for intentional misrepresentation seeks extracontractual remedies, but because it arises from a sale of goods governed by a contract, it is barred by the economic loss rule.

### C. Polymedco's Counterclaim

Polymedco's affidavit evidence of unpaid invoices is undisputed in the record and was conceded by First Care at oral argument. Accordingly, Polymedco is entitled to summary judgment on its counterclaim, with interest at the legal rate.

Interest on Polymedco's unpaid invoices, calculated at the legal rate of eight percent per annum from each invoice date through the date of the hearing in this matter on November 7, 2006, has accrued as follows:

| Invoice | Date | Amount | Interest |
|---------|------|--------|----------|
| #595451 | March 24, 2004 | $ 956.42 | $200.82 |
| #597557 | April 6, 2004 | $ 144.45 | $29.92 |
| #597641 | April 6, 2004 | $ 43.68 | $9.05 |
| #598566 | April 12, 2004 | $1,518.89 | $312.60 |
| #599837 | April 20, 2004 | $ 94.37 | $19.26 |
| #600100 | April 21, 2004 | $ 270.50 | $55.14 |
| #600328 | April 22, 2004 | $1,044.89 | $212.76 |
| #601037 | April 27, 2004 | $8,577.33 | $1,737.09 |
| | | $12,650.33 | $2,576.64 |

Accordingly, Polymedco is entitled to judgment in the amount of $15,227.17, comprising the principal amount of $12, 650.53 and interest in the amount of $2,576.64.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion for Summary Judgment" (Document No. 17) is **GRANTED**.

**IT IS FURTHER ORDERED,** that judgment is entered against Plaintiff on Defendant's Counterclaim in the amount of $15, 227.17, plus interest at the legal rate from November 8, 2006.

Signed: December 1, 2006

David C. Keesler
United States Magistrate Judge